JUDGE BATTS    **13 CIV 1033**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHELLE ORTIZ, | Civil Action No. |
| Plaintiff, | |
| - against - | |
| METROPOLITAN TRANSPORTATION AUTHORITY, JOHN D'AGOSTINO, SWAREN JATINDRANATH, JOHN BERLINGIERI, KAREN TAYLOR, ROSALIE GRASCIA, GARY HOYSRADT, GILBERT MACHADO, ELIZABETH BRODERICK, JOHN LESTER, MICHAEL PIZZO, MARY O'BRIEN, HANK LOEFFEL, DIANE NASH, ROBERT TERRETT, and JOSEPH MARTELLI, | **VERIFIED COMPLAINT**  |
| Defendants. | Trial by Jury |

Plaintiff, Michelle Ortiz, by and through her attorneys, Wolin & Wolin, complaining of the defendants, METROPOLITAN TRANSPORTATION AUTHORITY, JOHN D'AGOSTINO, SWAREN JATINDRANATH, JOHN BERLINGIERI, KAREN TAYLOR, ROSALIE GRASCIA, GARY HOYSRADT, GILBERT MACHADO, ELIZABETH BRODERICK, JOHN LESTER, MICHAEL PIZZO, MARY O'BRIEN, HANK LOEFFEL, DIANE NASH, ROBERT TERRETT, and JOSEPH MARTELLI, alleges as follows:

### Introduction

1.    This is an action, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the New York State Executive Law § 296 and § 297; and the New York City Administrative Code § 8-107, for employment discrimination based upon gender (female), race/color (African-American), and national origin (Hispanic).   Plaintiff alleges that defendants have discriminated against her on account of her gender, race/color, and national

origin. Plaintiff further alleges that defendants have violated 42 U.S.C. § 1981 and § 1983. Plaintiff

seeks appropriate monetary relief as well as appropriate equitable and other relief to redress the

wrongdoing complained of herein.

### Statement Pursuant to Local Rule 9

2.      For purposes of complying with Local Rule 9, plaintiff states that she has no

corporate parent, subsidiary, or affiliate and that there are no other interested parties.

### Jurisdiction & Venue

3.      Jurisdiction of the Court over this controversy is based upon 42 U.S.C. § 2000e-5(f),

28 U.S.C. §§ 1331, 1343 and 1346 and the Court's supplemental jurisdiction.

4.      Venue is proper in the United States District Court for the Southern District of New

York pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391.

### Jury Demand

5.      Plaintiff demands a trial by jury in this action on each and every one of her claims.

### Parties

6.      Plaintiff, at all times relevant hereto, was and still is a resident of Bronx County,

State of New York and a citizen of the United States of America.

### Metropolitan Transportation Authority

7.      Defendant METROPOLITAN TRANSPORTATION AUTHORITY ("MTA") was and still

is a public authority operating under and by virtue of the laws of the State of New York and

maintaining a principal place of business in the City, County and State of New York at 347 Madison

Avenue.

-2-

8.    Defendant MTA, at all times relevant hereto, was and still is in the business of providing interstate public transportation services by rail and as defined pursuant to 49 U.S.C. § 5331 and 49 C.F.R. § 655 *et seq*.

9.    In furtherance of its business purposes, defendant MTA maintains and operates a Police Department, of which plaintiff is a member.

10.    Defendant MTA is a corporation engaged in an industry and/or activity affecting commerce, as defined in 42 U.S.C. § 2000e(g)(h).

11.    At all relevant times, defendant MTA had and still has at least fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.  Therefore, defendant MTA is an "employer" for purposes of 42 U.S.C. § 2000e *et seq*. and other relevant statute.

Individual Defendants

12.    At all times relevant hereto, defendant JOHN D'AGOSTINO ("D'Agostino"), was and still is employed as Deputy Chief, Support Services, by defendant MTA.

13.    At all times relevant hereto, defendant SWAREN JATINDRANATH ("Jatindranath"), was and still is employed as a Police Captain by defendant MTA.

14.    At all times relevant hereto, defendant JOHN BERLINGIERI ("Berlingieri"), was and still is employed as a Police Captain by defendant MTA.

15.    At all times relevant hereto, defendant KAREN TAYLOR ("Taylor"), was and still is employed as a Police Sergeant by defendant MTA.

16.    At all times relevant hereto, defendant ROSALIE GRASCIA ("Grascia"), was and still

-3-

is employed as a Police Sergeant by defendant MTA.

17.    At all times relevant hereto, defendant GARY HOYSRADT ("Hoysradt"), was and still is employed as a Police Sergeant by defendant MTA.

18.    At all times relevant hereto, defendant GILBERT MACHADO ("Machado"), was and still is employed as a Police Sergeant by defendant MTA.

19.    At all times relevant hereto, defendant ELIZABETH BRODERICK ("Broderick"), was employed as a Police Sergeant by defendant MTA.

20.    At all times relevant hereto, defendant JOHN LESTER ("Lester"), was and still is employed as a Police Sergeant by defendant MTA.

21.    At all times relevant hereto, defendant MICHAEL PIZZO ("Pizzo"), was and still is employed as a Police Sergeant by defendant MTA.

22.    At all times relevant hereto, defendant MARY O'BRIEN ("O'Brien"), was employed as a Police Sergeant, Medical Control Unit by defendant MTA.

23.    At all times relevant hereto, defendant HANK LOEFFEL ("Loeffel"), was and still is employed as a Police Lieutenant by defendant MTA.

24.    At all times relevant hereto, defendant DIANE NASH ("Nash"), was and still is employed as a Police Lieutenant by defendant MTA.

25.    At all times relevant hereto, defendant ROBERT TERRETT ("Terrett"), was and still is employed as a Police Inspector by defendant MTA.

26.    At all times relevant hereto, defendant JOSEPH MARTELLI ("Martelli"), was and still is employed as a Police Inspector by defendant MTA.

27.     The named individual defendants participated in, approved, condoned, ratified, acquiesced in and carried out the actions complaint of herein.  They may be liable under state and local statute.

## Exhaustion of Administrative Remedies

28.     On or about January 20, 2012, plaintiff filed a written Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") and assigned Charge No. 520-2012-01021.

29.     In said Charge of Discrimination, plaintiff alleged that defendants had discriminated against her based upon her gender, race/color, and national origin.

30.     On November 20, 2012, the EEOC issued a Notice of Right to Sue to plaintiff with reference to her Charge of Discrimination.  Said notice advised plaintiff of her right to file an action against defendants in the appropriate federal court within ninety (90) days of her receipt thereof.

31.     Plaintiff has filed this action within ninety (90) days of her receipt of the Notice of Right to Sue.

32.     On or about January 18, 2012, plaintiff caused a Notice of Claim to be served upon defendants, pursuant to the General Municipal Law of the State of New York.

33.     More than 30 days have elapsed since plaintiff served the Notice of Claim and the claims remain open and unpaid.

## Facts

34.     Plaintiff is employed as a Police Officer with the Metropolitan Transportation Authority ("MTA").  She has been so employed for approximately six (6) years.

35.    During the course of her employment, plaintiff has been subjected to discrimination and a hostile work environment by her supervisors because of her gender (female), her race/color (African-American), and national origin (Hispanic). This conduct, which has been pervasive, ongoing and unwelcome, has no legitimate or justifiable reason.

36.    The supervisors who have committed this conduct include defendants Taylor, Jatindranath, Berlingieri, Grascia, Hoysradt, Machado, Broderick, Lester, Loeffel, Nash, Terrett, and Martelli.

37.    The actions against plaintiff have been continuous since she was hired by the MTA in January 2006.

38.    During plaintiff's hiring process, she was advised by Marshal Mazyk, her Applicant Investigator, that defendant Taylor, Applicant Investigations Supervisor, did not want to hire her because she was a Hispanic female and that she was doing everything possible to disqualify plaintiff. At one point during the panel interview with defendant Taylor and Investigator Mazyk, Investigator Mazyk stepped out of the room. Defendant Taylor then began yelling at plaintiff and falsely accused her of having resigned from the Baltimore City Police Department without having received an offer letter from defendant MTA and further falsely accused plaintiff of having sued Baltimore City, Maryland, plaintiff's previous employer. When, Investigator Mazyk returned to the room, he asked "What's going on?"

39.    Although plaintiff was hired, defendant Taylor delayed the processing of her application. Plaintiff was offered employment after just about all of the other officers hired with her were. Plaintiff did not receive a letter of appointment until right before the academy class

-6-

was to begin. The other hires received letters of appointment earlier. Defendant Taylor intentionally delayed plaintiff's letter of appointment to provide her with as little notice as possible.

40.     Once plaintiff was hired, the hostile work environment and discriminatory treatment continued. In 2006, while on probation, plaintiff was the victim of domestic violence and was in fear for her safety. She was being abused, physically and emotionally, on a daily basis. Plaintiff's live-in boyfriend at the time was employed by the New York City Police Department as a Captain in the Internal Affairs Bureau. He was personal friends with defendant D'Agostino. Plaintiff threatened to break-up with her boyfriend on several occasions, but he would always threaten her by saying he would contact defendant D'Agostino and get her fired.

41.     On one occasion, plaintiff finally got enough courage to leave her boyfriend. She then reported for field training at Penn Station. Her boyfriend appeared and requested to speak to plaintiff, while she was in the middle of her tour. Plaintiff was in such fear that she told her field training officer what was going on. The field training officer then reported it to the Sergeant on duty.

42.     Defendants required plaintiff to provide a memo to Internal Affairs. The following week, plaintiff attempted to explain to Lieutenant Pontorno that she was being physically and emotionally abused and was in fear for her life. Lieutenant Pontorno was very unsympathetic and would not listen. As plaintiff attempted to explain her situation and how her boyfriend threatened to call defendant D'Agostino and that no one would believe her, Lieutenant Pontorno talked over her and said "What did we tell you when you were in the academy? Didn't we tell you if you had

-7-

any domestic issues to get rid of them?"

43.     Plaintiff, unable to defend herself and in fear of getting terminated, was forced to return to the abusive home she was running from. Plaintiff's probation was then extended.

44.     Between January 2007 and December 2009, plaintiff was supervised by defendant Jatindranath, a non-Hispanic male. He incessantly picked on her. It was well-known that he did not like female police officers and he believed that he could bully female officers. Defendant Jatindranath unjustly called plaintiff a liar and said she was not to be trusted. He often needlessly questioned plaintiff's judgment. He embarrassed plaintiff in front of fellow officers, including during car stops, during roll call, and over the police radio. He assigned plaintiff to disfavored isolation posts. His treatment of plaintiff was so hostile that other officers would ask plaintiff why defendant Jatindranath was treating her so bad. Plaintiff finally had a meeting with defendant Jatindranath and told him that he was creating a hostile work environment. Defendant Grascia was present during this meeting. Defendant Grascia did nothing to prevent the future harassment from defendant Jatindranath.

45.     Beginning in 2008, plaintiff repeatedly asked for training that was being offered, including plainclothes training and radiation detection training.     Whenever a training announcement was made, plaintiff always let defendants Jatindranath and Hoysradt, her Squad Sergeant, know that she was interested in participating in the training.  Plaintiff was always overlooked for the training.  Some of the supervisors who passed plaintiff over included defendants Jatindranath, Hoysradt, Grascia, Loeffel, Berlingieri and Terrett. At the time, plaintiff advised defendant Hoysradt that she was being passed over.  Nothing was done.  Meanwhile, a

-8-

Caucasian female coworker regularly received training.

46.     In 2009, plaintiff applied to a position on a K-9 unit.   She was the only African-American and Hispanic female who applied.  Plaintiff had all of the prerequisites.  The panel, including defendant Martelli, was composed of all males.  Plaintiff was not selected.  To justify her non-selection, defendant Martelli, without basis, referred to "emotional issues." The K-9 positions were given to all males; some with less seniority, experience and qualifications than plaintiff. Some also had disciplinary backgrounds.

47.     In January 2010, plaintiff and a male officer discovered an improvised explosive device while working in Harlem.  They did not receive an award, although they should have.  The word was that they did not receive an award because plaintiff was involved.  Meanwhile, non-Hispanic females and Caucasian officers received awards for trivial things.

48.     In October 2011, certain training became available.  These training opportunities were considered prestigious.  One training session dealt with policing and was given by HIDTA. MTA supervisors only offered these training opportunities to Caucasian and male officers.

49.     On January 21, 2011 at Grand Central Station, plaintiff was injured on the job while trying to effect a lawful arrest.  She suffered torn ligaments to her right thumb.  At this time, plaintiff needed help because another officer's life was in danger (the officer was pinned to a bench by the subject and unable to defend himself).  Defendant Grascia, who was present, failed to take appropriate police action to assist plaintiff.  Defendant Nash, who witnessed the incident, failed to take any investigative or disciplinary action against defendant Grascia concerning her failure to take appropriate action.  The conduct by defendants Grascia and  Nash was related to

-9-

the fact that plaintiff is a Hispanic female.

50.     Plaintiff was out of work until April 2011. Prior to her return, the MTA contacted plaintiff's then orthopedic surgeon, Dr. Andrew Weiland of the Hospital for Special Surgery. The MTA, including defendants D'Agostino and O'Brien, improperly convinced Dr. Weiland to change his diagnosis to have plaintiff return to work earlier than was medically justified. When, as a result, plaintiff improperly returned to work in April 2010, she was still on prescribed narcotic medication. No other employee was coerced to return to work in this fashion.

51.     When plaintiff returned in April 2011, she was assigned on restricted duty to the Chief's Office at 347 Madison Avenue. This was an unusual assignment for anyone returning from a line of duty injury. All officers returning from a line of duty injury are initially assigned to the Polling Unit. Plaintiff was assigned to the Chief's Office because defendant Broderick did not want her working at the Polling Unit. Plaintiff was being singled out. In this assignment, plaintiff was constantly being scrutinized and was under a microscope. Plaintiff sat at the front desk within view of defendant Loeffel and Command Staff while heavily medicated. While so assigned, defendant Broderick gave plaintiff a difficult time without cause. For example, defendant Broderick would question plaintiff's travel time and travel location when traveling to work or signing out after therapy. One time, plaintiff was late because the MTA bus was late. Another time, plaintiff was sick on the bus. Defendant Broderick docked plaintiff vacation pay. Defendant Loeffel addressed plaintiff in a condescending tone on a daily basis and yelled at her when she asked him legitimate payroll questions. All of this conduct was not justified and plaintiff was, again, being subjected to this treatment on account of her gender, race/color and national origin.

-10-

52.     Plaintiff returned to full duty on August 25, 2011. Again, upon her return, she was subjected to a hostile work environment by, among others, defendants Grascia, Hoysradt, Pizzo and Nash. Plaintiff was intentionally assigned to hazardous posts, by herself, which were high crime areas. At the same time, Caucasian officers were given less dangerous posts. Caucasian officers assigned to hazardous posts are assigned with a partner, sometimes even two partners.

53.     On December 3, 2011, plaintiff was assigned to a hazardous post in Grand Central Station. Her partner had been pulled off the post and she was by herself. Suddenly, plaintiff had to pursue a perpetrator. While affecting a lawful arrest, plaintiff sustained a new line of duty injury which required immediate medical attention. The perpetrator injured plaintiff's hand. Other officers realized her injury and escorted the perpetrator to the District. Defendants Nash and Hoysradt were the supervisors for the day. When plaintiff arrived at the District, she advised them that she had injured her hand. Plaintiff was in a lot of pain. Her hand was swelling. At that time, defendants Nash and Hoysradt both displayed a complete lack of concern. They refused to complete an injury report. Defendant Nash walked away towards the lunchroom and defendant Hoysradt walked away towards the Desk Officer. Unsure of what to do, plaintiff continued to wait for some type of acknowledgment and direction from her superiors. None came. She then had to request her own ambulance and asked the Metro-North Fire Brigade to render first aid. Plaintiff was then transported to New York Presbyterian Hospital, where she was treated and released with a sprained wrist. Plaintiff was amazed at the lack of interest and concern by defendants Nash and Hoysradt; both of whom acted improperly and clearly in a discriminatory and hostile manner. Had plaintiff been a male officer or Caucasian female officer, she certainly would have been treated

-11-

differently. Plaintiff was, thereafter, medically unable to work.

54.      During the course of her employment, plaintiff has been subject to other incidents of discrimination and hostile work environment at other districts that have been condoned and acquiesced in by the MTA.

55.      On October 18, 2011 at District 6, defendant Lester took a picture of a Black male perpetrator. He gave it to a Caucasian police officer and stated "Look, here's a picture of Ziegler's kid," referring to the MTA Chief of Security. Plaintiff was present at the time in District 6 and heard Sergeant Lester's remark. Plaintiff gasped in disbelief and shock. The officer laughed. Plaintiff said "That's wrong." He replied "Your hair looks like his." Plaintiff felt humiliated and discriminated against.

56.      On October 23, 2011 at District 6, defendant Machado made a statement in front of other officers. He said that plaintiff was on the "shit list."

57.      Defendant Pizzo told other officers and supervisors that plaintiff is defendant Hoysradt's girlfriend. That is untrue and it makes plaintiff uncomfortable when she is around defendant Hoysradt and other officers. Defendants Nash and Berlingieri were aware of defendant Pizzo's comments and did nothing to correct them. Instead, they found the comments to be amusing and entertaining and allowed them to continue. Defendant Pizzo's comments portrayed plaintiff as defendant Hoysradt's "snitch," thus creating a very hostile working environment. They felt uncomfortable working with plaintiff because they believed they could not trust her. This caused plaintiff to fear for her safety because she was afraid they would not back her up on the hazardous post she was often assigned to.

-12-

58.    Defendant Grascia has referred to plaintiff as a "bitch" or "Black bitch" in the presence of other officers and supervisors.

59.    The said actions have been unjustified and without legitimate reason. The MTA and its supervisors are discriminating against plaintiff and are creating a hostile work environment for no good reason and are acting for purposes not related to legitimate job related reasons, to wit: plaintiff's gender, race/color, and national origin.

60.    Defendants have and continue to engage in said action with the intent to make plaintiff's existence so intolerable that she will have no choice but to resign. Defendants are trying to set plaintiff up for failure.

61.    At the same time, male, non-African-American, non-Hispanic and female Caucasian officers are treated much more favorably.

### Count I against the MTA

62.    Plaintiff alleges that the complained of actions, violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, in that the actions of defendant constitutes unlawful employment practices because of plaintiff's gender.

63.    By its actions, defendant has treated plaintiff differently from other employees on account of her gender and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*.

64.    By its actions, defendant has also subjected plaintiff to a hostile work environment because of her gender.

65.     The acts of defendant have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

66.     The actions and conduct of defendant constitutes unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

67.     Defendant cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified.  Any alleged non-discriminatory reason is nothing more than a pretext so that defendant could attempt to mask its actions.

68.     By reason of the actions and inactions of defendant, whereby defendant has engaged in unlawful discriminatory practices based upon gender, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

69.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, punitive damages, other appropriate damages, attorneys fees, expert fees, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

**Count II against the MTA**

70.     Plaintiff alleges that the complained of actions, violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, in that the actions of defendant constitutes unlawful employment practices because of plaintiff's race/color.

-14-

71.     By its actions, defendant has treated plaintiff differently from other employees on account of her race/color and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*.

72.     By their actions, defendant has also subjected plaintiff to a hostile work environment because of her race/color.

73.     The acts of defendant have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

74.     The actions and conduct of defendant constitutes unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

75.     Defendant cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified.  Any alleged non-discriminatory reason is nothing more than a pretext so that defendant could attempt to mask its actions.

76.     By reason of the actions and inactions of defendants, whereby defendant has engaged in unlawful discriminatory practices based upon race/color, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

77.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, punitive damages, other appropriate damages,

attorneys fees, expert fees, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count III against the MTA

78.     Plaintiff alleges that the complained of actions, violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, in that the actions of defendant constitutes unlawful employment practices because of plaintiff's national origin.

79.     By their actions, defendant has treated plaintiff differently from other employees on account of her national origin and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*.

80.     By its actions, defendant has also subjected plaintiff to a hostile work environment because of her national origin.

81.     The acts of defendant have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

82.     The actions and conduct of defendant constitutes unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

83.     Defendant cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified. Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask its actions.

84.     By reason of the actions and inactions of defendant, whereby defendant has

engaged in unlawful discriminatory practices based upon national origin, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

85.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, punitive damages, other appropriate damages, attorneys fees, expert fees, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count IV against All Defendants

86.     Plaintiff alleges that the complained of actions violate Article 15 of the New York State Executive Law, specifically § 296 and § 297, in that the actions of defendants constitute an unlawful employment practice because of plaintiff's gender.

87.     By their actions, defendants have treated plaintiff differently from other employees on account of her gender and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Article 15 of the New York State Executive Law.

88.     By their actions, defendants have also subjected plaintiff to a hostile work environment because of her gender.

89.     The acts of defendants have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

90.     The actions and conduct of defendants constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

-17-

91.     Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified. Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask their actions.

92.     By reason of the actions and inactions of defendants, whereby defendants have engaged in unlawful discriminatory practices based upon gender, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

93.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, other appropriate damages, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count V against All Defendants

94.     Plaintiff alleges that the complained of actions violate Article 15 of the New York State Executive Law, specifically § 296 and § 297, in that the actions of defendants constitute an unlawful employment practice because of plaintiff's race/color.

95.     By their actions, defendants have treated plaintiff differently from other employees on account of her race/color and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Article 15 of the New York State Executive Law.

96.     By their actions, defendants have also subjected plaintiff to a hostile work environment because of her race/color.

-18-

97.    The acts of defendants have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

98.    The actions and conduct of defendants constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

99.    Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified. Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask their actions.

100.    By reason of the actions and inactions of defendants, whereby defendants have engaged in unlawful discriminatory practices based upon race/color, plaintiff has suffered economic loss; her career was been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

101.    By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, other appropriate damages, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count VI against All Defendants

102.    Plaintiff alleges that the complained of actions violate Article 15 of the New York State Executive Law, specifically § 296 and § 297, in that the actions of defendants constitute an unlawful employment practice because of national origin.

103.    By their actions, defendants have treated plaintiff differently from other employees

on account of her national origin and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Article 15 of the New York State Executive Law.

104.    By their actions, defendants have also subjected plaintiff to a hostile work environment because of her national origin.

105.    The acts of defendants have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

106.    The actions and conduct of defendants constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

107.    Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified.  Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask their actions.

108.    By reason of the actions and inactions of defendants, whereby defendants have engaged in unlawful discriminatory practices based upon plaintiff's national origin, plaintiff has suffered economic loss; her career was been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

109.    By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, other appropriate damages, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count VII against All Defendants

110.    Plaintiff alleges that the complained of actions violate New York City Administrative Code §8-107 in that the actions of defendants constitute an unlawful employment practice because of plaintiff's gender.

111.    By their actions, defendants have treated plaintiff differently from other employees on account of her gender and discriminated against her in compensation, terms, conditions and privileges of employment in violation of New York City Administrative Code §8-107.

112.    By their actions, defendants have also subjected plaintiff to a hostile work environment because of her gender.

113.    The acts of defendants have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

114.    The actions and conduct of defendants constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

115.    Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified.  Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask their actions.

116.    By reason of the actions and inactions of defendants, whereby defendants have engaged in unlawful discriminatory practices based upon gender, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and

was otherwise greatly injured.

117.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, punitive damages, other appropriate damages, attorneys fees, expert fees, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count VIII against All Defendants

118.     Plaintiff alleges that the complained of actions violate New York City Administrative Code §8-107 in that the actions of defendants constitute an unlawful employment practice because of plaintiff's race/color.

119.     By their actions, defendants have treated plaintiff differently from other employees on account of her race/color and discriminated against her in compensation, terms, conditions and privileges of employment in violation of New York City Administrative Code §8-107.

120.     By their actions, defendants have also subjected plaintiff to a hostile work environment because of her race/color.

121.     The acts of defendants have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

122.     The actions and conduct of defendants constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

123.     Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified. Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask

their actions.

124. By reason of the actions and inactions of defendants, whereby defendants have engaged in unlawful discriminatory practices based upon race/color, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

125. By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, punitive damages, other appropriate damages, attorneys fees, expert fees, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count IX against All Defendants

126. Plaintiff alleges that the complained of actions violate New York City Administrative Code §8-107 in that the actions of defendants constitute an unlawful employment practice because of plaintiff's national origin.

127. By their actions, defendants have treated plaintiff differently from other employees on account of her national origin and discriminated against her in compensation, terms, conditions and privileges of employment in violation of New York City Administrative Code §8-107.

128. By their actions, defendants have also subjected plaintiff to a hostile work environment because of her national origin.

129. The acts of defendants have been pervasive, unfair, discriminatory, disruptive to plaintiff's title, position and physical and psychological well-being.

-23-

130.   The actions and conduct of defendants constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

131.   Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified.   Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask their actions.

132.   By reason of the actions and inactions of defendants, whereby defendants have engaged in unlawful discriminatory practices based upon plaintiff's national origin, plaintiff has suffered economic loss; her career has been placed in jeopardy; was made emotionally and physically ill; suffered and continues to suffer damage to her reputation among her peers; embarrassment; humiliation and was otherwise greatly injured.

133.   By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, punitive damages, other appropriate damages, attorneys fees, expert fees, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

### Count X against All Defendants

134.   Defendants, by their actions, have violated 42 U.S.C. §§ 1981 and 1983.

135.   By reason of the actions and inactions of defendants, whereby defendants have engaged in unlawful discriminatory practices based upon gender, race/color and national origin, plaintiff has suffered and continues to suffer economic loss; her career has been placed in jeopardy; she was made emotionally and physically ill; suffered and continues to suffer damage

-24-

to her reputation among her peers, embarrassment; humiliation; and was otherwise greatly injured.

136.    By reason of the foregoing, plaintiff has become entitled to an award of compensatory and punitive damages in an amount to be determined by a jury at trial, together with costs and disbursements, attorneys fees, and appropriate interest.

### Prayer for Relief

WHEREFORE, plaintiff respectfully requests that judgement be entered against defendants, on each and every count hereinbefore pled, awarding her appropriate injunctive relief, an award of compensatory damages, an award of punitive damages, an award of other appropriate damages, an award of attorneys fees, an award of expert fees, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

Dated: Jericho, New York
        February 5, 2013

Respectfully submitted,
WOLIN & WOLIN

By: Alan E. Wolin, Esq.
Attorney for *Plaintiff*
420 Jericho Turnpike, Suite 215
Jericho, New York 11753
Telephone: (516) 938-1199
Facsimile: (516) 938-1178
E-Mail: wolinlaw@aol.com

## **VERIFICATION**

State of New York )

)ss.:

County of Nassau )

MICHELLE ORTIZ, being duly sworn, deposes and says:

I am the plaintiff in the within action and I have read the foregoing Verified Complaint and

know the contents thereof, the same is true to my knowledge, except as to those matters therein

stated to be based upon information and belief, and as to those matters I believe them to be true.

MICHELLE ORTIZ

Sworn to before me this
5th day of February, 2013

Notary Public

JILL A. FIEMAN
Notary Public, State of New York
No. 4993075
Qualified in Nassau County
Commission Expires March 9, _____ 2014